IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-cv-00068-RJC-DCK

|  |  |
|---|---|
| JOHN A. OLAGUES and RAY WOLLNEY, <br><br> Plaintiffs, <br><br> v. <br><br> JEROME PERIBERE and SEALED AIR CORPORATION, <br><br> Defendants. | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING PLAINTIFFS' AMENDED COMPLAINT |

Defendants, Jerome A. Peribere ("Peribere") and Sealed Air Corporation ("Sealed Air" or the "Company") (collectively "Defendants"), through counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, respectfully submit this memorandum of law in support of their Motion for Judgment on the Pleadings Dismissing Plaintiffs' Amended Complaint.

## I.    SUMMARY OF ARGUMENT

Plaintiffs are purported shareholders of Sealed Air and are proceeding *pro se* in this matter,[1] which turns on the interpretation of SEC rules governing whether certain tax-related transactions are exempt from the short-swing trading provisions of Section 16 of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78p(b) ("Section 16(b)").  Plaintiffs contend that the Company's President and Chief Executive Officer, Peribere, earned improper short-swing profits as a result of a routine tax withholding of shares pursuant to a pre-approved equity compensation plan, and now

---

[1] Plaintiffs have made a cottage industry out of filing baseless short swing profit lawsuits, seeking to extract nuisance settlements from litigants like Defendants.  *See, e.g.*, *Olagues v. Icahn*, 866 F. 3d 70 (2nd Cir. 2017); *Olagues v. Perceptive Advisers LLC*, No. 15-cv-1190, 2017 WL 3605511 (S.D.N.Y. July 26, 2017); *Olagues v. Muncrief*, No. 17-cv-153, 2017 WL 2471062 (N.D. Okl. June 6, 2017); *Olagues v. Elich*, No. 3:16-cv-05924 (W.D. Wash.); *Olagues v. Berger*, No. 1:16-cv-11760 (D. Mass.); and *Olagues v. Dimon*, No. 1:14-cv-4872 (S.D.N.Y.).  Mr. Olagues has even been dubbed a "vexatious litigant" in California.  California Judicial Branch, *Vexatious Litigant List*, http://www.courts.ca.gov/documents/vexlit.pdf (last updated Aug. 1, 2017).

1

must disgorge them. In order to prevail, Plaintiffs must show that the 2015 tax withholding was a non-exempt disposition of shares under the controlling SEC regulations.

Plaintiffs incorrectly argue that Peribere's tax withholding was a non-exempt "sale" because the specific terms of the tax withholding allegedly were not (i) "approved in advance" (Doc. 3 p. 4, ¶ 11) and (ii) "approved with the required specificity" (*Id*. p. 5, ¶ 14). To the contrary, the controlling SEC regulations establish as a matter of law that Peribere's tax withholding was both pre-approved and specific. Plaintiffs also argue that the tax withholding was not an "automatic" disposition (*Id*. p. 4, ¶ 12), citing (and misinterpreting) a single SEC staff Q and A response in order to create an automatic disposition requirement (*Id*. pp. 4–5, ¶ 13). No such requirement, however, exists in the controlling SEC regulations. Moreover, Plaintiffs' argument about "automatic" dispositions is futile, as the plain language of the Company's governing stock plans directs that any stock awards must be automatically adjusted for tax withholdings. (Doc. 7-5 p. 6, § 18 ("***shall*** make appropriate provisions for the ***withholding of*** any federal state or local ***taxes***") (emphasis added); Doc. 7-4 p. 78 ("***will be paid*** in actual shares of Company common stock, ***less*** the ***number of shares*** that may be withheld ***to satisfy applicable withholding taxes***") (emphasis added).) Finally, Plaintiffs pose a circular argument based on tax regulations which illogically presumes the precise matter that Defendants disprove here: that the 2015 tax withholding was non-exempt. (Doc. 3 pp. 5–6, ¶¶ 16–19.)

Defendants' Amended Answer and exhibits thereto establish that Peribere's tax withholding was an exempt transaction under Section 16(b). Consequently, there was no pairing of transactions within a six-month period, and no short-swing "profits" to disgorge. Defendants accordingly submit that this action should be dismissed on the pleadings, as a matter of law.

## II. BACKGROUND

### A. Sealed Air's 2005 Contingent Stock Plan and 2012-14 PSU Document Provided for Pre-Approved, Specific and Automatic Tax Withholding

Sealed Air's 2015 withholding of shares from Peribere's Performance Share Units ("PSUs") was conducted under the long-standing authority of the Company's 2005 Contingent Stock Plan (the "2005 Plan") and its correlative 2012-2014 PSU form of award agreement (the "PSU Document"). (*See* Doc. 7-4 pp. 77–88 (PSU Document); Doc. 7-5 (2005 Plan). The 2005 Plan and PSU Document, taken together, *automatically* provided for tax withholding, were sufficiently specific, and were clearly pre-approved in advance of the disputed 2015 tax withholding.

First, the Company's 2005 Plan provided the direction and authority for the Company to withhold shares to cover required tax withholding obligations:

> Each Award Grant incident to the Plan *shall* make appropriate provisions for the *withholding of* any federal, state or local *taxes* and any other charges that may be required by law to be withheld by reason of an Award, the issuance of Common Stock under the Plan or the reacquisition of such Common Stock by the Corporation. *The Corporation may cause all or any portion of any tax withholding obligation* or other charges described in the preceding sentence *to be satisfied by the Corporation withholding from the shares of Common Stock* covered by an Award a number of shares (rounded down to the nearest whole share) with an aggregate Fair Market Value on the date that such withholding obligation arises equal to the aggregate amount of such taxes and other charges.

(Doc. 7-5 p. 6, § 18 (emphasis added).)

Next, the PSU Document implemented this authority and gave further detail on how the Company will automatically provide the tax withholding: "[PSUs] earned at the end of the Performance Period, if any, *will be* paid in actual shares of Company common stock, *less* the number of shares that may be withheld to satisfy applicable *withholding taxes*." (*See* Doc. 7-4 p. 78 (emphasis added).) The PSU Document thus implements the tax withholding authority

3

provided by the Company's 2005 Plan. (*See* Doc. 7-4 p. 77; Doc. 7-5 p. 6, § 18.) Thus, the pre-approved tax withholding was explicitly laid out in the 2005 Plan and PSU Document.

### B. Peribere's PSU Stock Grant and Tax Withholding Were Pre-Approved, Specific and Automatic

On August 28, 2012, Sealed Air offered Peribere a position as its President and Chief Executive Officer. (*See* Doc. 7-1.) The offer and its terms were approved well in advance, on August 13, 2012, by the Company's Organization and Compensation Committee (the "Committee"). (*See* Doc. 7-2.) The Committee has always been, and was at the time it approved the terms of Peribere's offer, comprised entirely of non-employee members of Sealed Air's Board of Directors. (*See* Doc. 7-5 p. 4, § 4.) Additionally, at all relevant times, members of the Committee were not employed by any Sealed Air parents or subsidiaries, did not receive direct or indirect compensation from Sealed Air, any parent of Sealed Air, or any subsidiary of Sealed Air, other than as a director. (*Compare* Doc. 7-2 *with* Doc 7-3, pp. 6, 20, 23, 85; Doc 7-4 p. 83; Doc. 7-5, p. 4, § 4.) These details are relevant to establishing that the 2015 tax withholding is clearly an exempt transaction under Section 16(b).

Part of Peribere's offer of employment that the Committee approved was the grant of certain PSUs under the terms of Sealed Air's existing PSU Document, which the Committee had previously approved on March 27, 2012. (*See* Doc. 7 pp. 4–5, ¶ 23; Doc. 7-1 p. 3; Doc. 7-2.) On February 16, 2015, pursuant to the PSU Document and the 2005 Plan, the Company withheld 64,411 of the 141,697 shares awarded to Peribere under those plans for tax withholding purposes (the "2015 Withholding"). (*See* Doc. 3-1 p. 3.) On the date of the 2015 Withholding, Sealed Air was valued at $46.05 per share. (*See* Doc. 3-1 p. 3.) Approximately three months prior to the 2015 Withholding, on November 19, 2014, Peribere acquired 13,096 shares in Sealed Air on the open market for $38.17 per share (the "2014 Acquisition"). (*See* Doc. 3-1 p. 2.) Plaintiffs

4

incorrectly contend that the 2014 Acquisition and the 2015 Withholding constitute the purchase and sale of Sealed Air stock within a six-month period, in violation of Section 16(b).[2]  As the value of Sealed Air shares had increased by about $7.88 per share between the 2014 Acquisition and the 2015 Withholding, Plaintiffs mistakenly assert that Peribere enjoyed an improper short-swing profit of approximately $103,196 that should be disgorged to Sealed Air.

### C. Sealed Air Properly Considered and Rejected Plaintiffs' Disgorgement Requests And Now Seeks Judgment on the Pleadings

On October 20, 2016, Plaintiffs sent a demand letter to the Company, setting out substantially the same allegations pled in Plaintiffs' Complaint.   On November 14, 2016, the Company's Vice President, Associate General Counsel and Assistant Secretary provided a detailed letter to each of the Plaintiffs, explaining that the 2015 Withholding was exempt under Rule 16(b) and denying that disgorgement was required.   (*See* Doc. 3 p. 3, ¶ 10 (alleging jurisdictional rejection of pre-suit "Demand").)

On February 14, 2017, Plaintiffs commenced action by filing a complaint.  On March 24, 2017, Plaintiffs filed an Amended Complaint, which purports to allege a claim for disgorgement of supposed short-swing profits under Section 16(b).  (Doc. 3 p. 7.)  On May 5, 2017, Sealed Air and Peribere filed their Answer to the Amended Complaint, denying liability for the claim asserted. (*See* Doc. 6.)  Shortly thereafter, on May 15, 2017, Defendants filed a verified Amended Answer, attaching several exhibits demonstrating that the pre-approved tax withholding was an exempt transaction that could not have given rise to short-swing profits. (*See* Doc. 7.)

---

[2] Defendants do not dispute that Peribere is an insider who is subject to Section 16(b), nor do they dispute the 2014 Acquisition.  For enforcement purposes, transactions to acquire and dispose of securities must be publicly filed with the SEC on a Form 4, which permits the SEC, shareholders, and others to determine whether any purchases can be "matched" with sales occurring within a six-month period, and vice versa.  Sealed Air properly completed and submitted the requisite Form 4 information on behalf of Peribere.

5

The pleadings have closed, and Defendants now move the Court to dismiss the Amended Complaint under Rule 12(c). It is evident from the face of the pleadings that the complained-of tax withholding event is an exempt transaction, not a sale, and therefore cannot give rise to any short-swing profits subject to disgorgement.

## III.    ARGUMENT

### A.    Dismissal on the Pleadings Is Appropriate for this Dispute over Interpretation of SEC Regulations

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a judgment on the pleadings, "a court is limited to the contents of pleading documents, [including exhibits attached to such pleadings], and matters sufficiently incorporated by reference." *Jones v. Penn. Nat'l Ins. Co.*, 835 F. Supp. 2d 89, 93 (W.D.N.C. 2011) (internal citations omitted). Judgment on the pleadings should be granted if, after accepting the nonmovant's factual allegations as true and viewing the facts in the light most favorable to the nonmovant, it appears that the movant is entitled to judgment as a matter of law. *Bradley v. Ramsey*, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004). A movant is entitled to judgment on the pleadings as a matter of law if the pleadings do not disclose "enough facts to state a claim to relief that is *plausible* on its face." *Giarratano v. Johnson*, 521 F. 3d 298, 302 (4th Cir. 2008). And while the court "must take the facts in the light most favorable to [the nonmoving party], [it] need not accept the legal conclusions drawn from the facts." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000).

Matters that turn on interpretation of statutes or regulations are particularly amenable for judgment on the pleadings. *See Stone v. Instrumentation Lab Co.*, 591 F.3d 239, 242-43 (4th Cir. 2009) (noting that question of statutory interpretation is a question of law); *Cox v. Indian Head Indus., Inc.*, No. CIV 2:98-cv-175, 1999 WL 33320964, at *1 (W.D.N.C. Mar. 29, 1999)

("[J]udgment on the pleadings should be entered where it is apparent that … only questions of law exist.") Here, "[t]o state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege: (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six-month period (3) by a statutory insider." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014); *see also* 15 U.S.C. § 78p(b).

Because the SEC's regulations clearly establish that the 2015 Withholding is an exempt disposition, Plaintiffs have failed to establish an essential element of their cause of action, and judgment on the pleadings dismissing this action is appropriate.

**B. SEC Regulations Prohibit Unfair Use of Insider Information, but Exempt Normal Business Transactions**

Section 16(b) of the Securities Exchange Act of 1934 requires that: "For the purpose of preventing the unfair use of [insider] information, … any profit realized by [an officer] from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer." 15 U.S.C. § 78p(b). Section 16(b) delegates to the SEC the authority to promulgate rules and regulations to exempt normal business transactions which are not an "unfair use" of information: "This subsection shall not be construed to cover . . . any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id.*

The SEC exercised its delegated rulemaking authority to exempt certain "dispositions to the issuer." 17 C.F.R. § 240.16b-3(e) (2016) ("Rule 16b-3(e)"). This exemption acknowledges that restricting the transfer of securities from a shareholder to the issuer of those securities does not serve the purpose of Section 16(b), which is to prevent insiders from capitalizing on inside

7

information, to the detriment of those with whom they are transacting. In this case, the insider, Peribere, is transacting with Sealed Air itself, the quintessential insider, at the Company's, not Peribere's, election. The Company could not possibly be at an informational disadvantage to Peribere. Therefore, the 2015 Withholding is not the sort of "unfair use" of information that Congress (and the SEC) seek to prohibit under Section 16(b).

Section 16(b) is a strict liability statute and, as such, "[f]inancial instruments that do not fall squarely into this framework are to be construed narrowly to favor the insider." *Donoghue v. Patterson Cos., Inc.* ("*Donoghue I*"), 990 F. Supp. 2d 421, 424 (S.D.N.Y. 2013). "[W]here alternative constructions of the terms of § 16(b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders," *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 424 (1972). As the Second Circuit has explained, Section 16(b) serves to "deter 'insiders,' who are presumed to possess material information about the issuer, from using such information as a basis for purchasing or selling the issuer's equity securities at an advantage over persons with whom they trade." *In re Facebook, Inc., IPO Sec. & Derivative Litig.,* 986 F. Supp. 2d at 550.

### C. Under the Controlling SEC Regulations, the 2015 Withholding Was an Exempt Transaction

Under its rulemaking authority, the SEC promulgated a set of regulations governing "[t]ransactions between an issuer and its officers or directors." 17 C.F.R. § 240.16b-3. As part of this rulemaking, the SEC issued a set of controlling regulations that determine whether the 2015 Withholding, which is a "disposition to the issuer," is exempt. 17 C.F.R. § 240.16b-3(d)(1), (e), n.3. By Rule 16b-3(e), the SEC exempts "[a]ny transaction . . . involving the disposition to the issuer of issuer equity securities . . . provided that the **terms** of such disposition are **approved in advance** in the manner prescribed by . . . paragraph (d)(1) . . . of this section." 17 C.F.R. § 240.16b-

8

3(e) (emphasis added).  Paragraph (d)(1) then  provides for approval of a transaction "by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors."  17 C.F.R. § 240.16b-3(d)(1) ("Rule 16b-3(d)(1)").

Note 3 to Rule 16b-3(e) further clarifies the reach of this exemption in two important ways. First, it states that the exemption under Rule 16b-3(e) "require[s] the approval of each specific transaction, and [is] not satisfied by approval of a plan in its entirety *except for* the approval of a plan pursuant to which the terms and conditions of each such transaction are *fixed in advance*, such as a formula plan."  17 C.F.R. § 240.16b-3 n.3 ("Note 3") (emphasis added).  Here, the PSU Document provides its terms and conditions in advance of payment of any Performance Share Units earned thereunder.[3]  Any PSU award is based upon a pre-approved formula set forth within the plan itself.  (*See* Doc. 7-4 pp. 80–81.)  Thus, the terms of the disposition were approved in advance, as required for exemption under Rule 16b-3(e).  Nor can there be any dispute that the requirement of Rule 16b-3(d)(1) is met:  the disposition was approved by a committee composed solely of two or more Non-Employee Directors.  (*See* Doc. 7-2; Doc. 7-4 p. 43; Doc. 7-5 p. 6, § 18.)  Second, Note 3 makes clear that no separate approval is required for any subsequent tax withholding:  "Where the terms of a subsequent transaction (such as the . . . provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraph [16b-3(e)], such subsequent transaction *shall not require further specific approval*."  17 C.F.R. § 240.16b-3 n.3 (emphasis added).  When these controlling regulations are read together,

---

[3] Plaintiffs apparently do not—and certainly cannot—dispute that the PSU Document is formulaic in its calculation of awards.  As noted above, well before Peribere received payment under the PSU Document, the Committee—comprised of "Non-Employee Directors" as that term is defined under Rule 16b-3(b)(3)(i)—had already approved the plan's tax withholding provision and its application to Peribere's right to receive payment under the PSU Document.

9

the Company's advance approval of the terms of the PSU Document plainly exempt the subsequent 2015 Withholding from Section 16(b).

Notably, the controlling regulations in Rule 16b-3(d)(1), (e) and Note 3 ***nowhere*** require that a plan be "automatic." That word does not appear anywhere in the controlling SEC regulations or explanatory notes for dispositions to the issuer.

### D. Both the SEC and Judicial Precedent Confirm that the 2015 Withholding is Exempted by the Controlling SEC Regulations

Both the SEC and the courts have confirmed that Rules 16b-3(d)(1) and (e) unambiguously require only pre-approval of the initial terms of the disposition, and do not require subsequent approval of the tax withholding. In providing guidance to the American Bar Association on December 20, 1996 (the "ABA No-Action Letter"), the SEC stated:

> Approval of Subsequent Transactions . . . Note 3 states that initial approval of a plan in its entirety will be sufficiently specific where the terms of each transaction are fixed in advance. The Note also provides that ***where the terms of a subsequent transaction are provided for in a transaction as initially approved, the subsequent transaction will not require further specific approval***.
>
> . . .
>
> The ***specific approval standards*** of Note 3 will be ***satisfied*** to exempt these transactions where:
>
>     i.   the derivative securities are issued pursuant to terms that contemplate settlement in cash that is either ***non-volitional*** or upon exercise at the holder's discretion within a finite term;
>
>     ii.   the derivative securities are issued upon terms that ***do not grant the plan participant discretion*** as to the number of derivative securities initially acquired; and
>
>     iii.   the disposition to the issuer . . . is ***pursuant to terms specified at the time of initial approval*** of the acquisition of the derivative securities in accordance with Rule 16b-3(d)(1) or (2).

10

*American Bar Association, SEC No-Action Letter*, 1996 WL 729381, at *3 (Dec. 20, 1996) (emphasis added).

Applying the ABA No-Action Letter to our facts, the 2015 Withholding was sufficiently specific to qualify for exemption because the grant to Peribere was non-volitional and non-discretionary, and the 2015 Withholding was made pursuant to the terms specified in the originally approved PSU. In light of this controlling SEC guidance, there can be no argument that the PSU grant of Peribere's tax withholding was not sufficiently specific to qualify for exemption.

The court in *Donoghue v. Casual Male Retail Grp., Inc.* ("*Donoghue II*") subsequently applied another SEC No-Action Letter to conclude that a "net exercise" of an option, which permits the executive to choose to pay the exercise price by surrender of a portion of the option shares, qualifies for the Rule 16b-3(e) exemption based on the pre-approval of the option grant, and no subsequent approval of the actual "net exercise" transaction would be required. 427 F. Supp. 2d 350, 357 (S.D.N.Y. 2006). In considering this question, the court referenced another SEC no-action Letter issued to the American Society of Corporate Secretaries (the "ASCS No-Action Letter"), stating that where an option that permitted the withholding or delivery of shares in payment of the exercise price was approved in accordance with Rule 16b-3(e), the subsequent withholding transaction would not require approval. *Id.* (citing *Am. Soc'y of Corp. Secretaries, SEC No-Action Letter*, 1996 WL 709328, at *7–8 (Dec. 11, 1996)).

In sum, the clear language of the controlling regulations, coupled with the definitive guidance of the ABA No-Action Letter, the ASCS No-Action Letter, and *Donoghue II*, establish that the 2015 Withholding met the regulatory requirements for exemption: pre-approval of an award with fixed and specific terms and conditions, regardless whether withholding is automatic after the initial approval. Consequently, Defendants are entitled to judgment on the pleadings.

11

### E. Plaintiffs Misconstrue an Informal SEC Q and A to Require that a Transaction Be "Automatic" When the Controlling SEC Regulations Require No Such Thing

The clear language of the controlling SEC regulations (Rule 16-b3(d)(1), (e) and Note 3) say nothing about requiring an "automatic" disposition. In fact, the controlling SEC guidance is directly to the contrary. In applying Rule 16b-3(d)(1), (e) and Note 3, the SEC in its ACSC No-Action Letter approved an exemption for a ***non-automatic*** disposition that was discretionary at the election of an executive. Similarly, the pre-approved grant at issue in *Donoghue II* also did not provide for an "automatic" subsequent disposition, but instead left the later net exercise feature to the executive's discretion and election. *Donoghue II*, 427 F. Supp. 2d at 355–56. Nevertheless, the *Donoghue* court determined that the initial plan approval was sufficient to cover a subsequent withholding, therefore entitling the subsequent disposition to claim the Rule 16b-3(e) exemption: "[T]he fact that Jewelcor could . . . choose among a certain number of ways of paying the exercise price" did not "place[] the Option Agreement beyond the scope of [the] Rule 16b-3 exemption." *Donoghue II*, 427 F. Supp. 2d at 356. "Thus where the board of directors approved the grant of an option, including the provision of a withholding right, the board need not approve the subsequent exercise of the option and the related withholding of the shares to exercise the option." *Id.* at 357.

In contrast to the SEC's clear interpretation of the controlling regulations, Plaintiffs attempt to bootstrap an "automatic" transaction requirement from an informal Q and A with the SEC that dealt with a different topic: automatic reload plans. (Doc. 3 p. 4, ¶ 13.)[4] The language of the Q

---

[4] The Q and A provides:

> Approval of a grant that by its terms provides for ***automatic reloads*** would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis. The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right.

SEC Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, § 123.16 (May 23, 2007), *available at* https://www.sec.gov/divisions/corpfin/guidance/sec16interp.htm (emphasis added).

and A discusses only automatic reload options,[5] not pre-approved equity plans.[6] The Q and A addresses whether the grant of a reload option and any subsequent net exercise or withholding rights must be separately approved, or whether they are pre-approved by terms of the original option grant. *Id.* The guidance favorably states that if the original option provides for automatic reloads upon exercise of the original, the subsequent reload grant does not require re-approval, and any tax- or exercise-withholding rights that are attendant to that automatic reload option also do not require re-approval to qualify for the Rule 16b-3(e) exemption. *Id.*

Ultimately, however, Plaintiffs attempt to graft a nonexistent requirement of "automatic" dispositions onto the controlling regulations (Rule 16b-3(d)(1), (e) and Note 3) cannot aid Plaintiffs' cause, as the controlling 2005 Plan and PSU Document actually ***do*** provide for automatic tax withholding by the Company. (Doc. No. 7-4 p. 78 ("Units earned at the end of the Performance Period, ***will be*** paid in actual shares of Company common stock, less the number of shares that may be withheld to satisfy applicable ***withholding taxes***.") (emphasis added); *see also* Doc. 7-5 p. 6, § 18 ("Each Award Grant incident to the Plan shall make appropriate provisions for the withholding of any federal, state or local taxes . . . .").) To the extent that Plaintiff diverts focus to the word "may" in the PSU Document ("less the number of shares that *may* be withheld to satisfy applicable withholding taxes"), this phrase clearly refers to the variable amount of the tax withholding that ***will be*** taken out of the share disposition. That withholding is automatic, and only the quantum of the withholding varies.

---

[5] Reload options are options granted upon the exercise of an original option, at fair market value on the date of exercise of the original option. Reload options allow an executive to realize the gain on the original option and preserve future opportunities with the reload option.

[6] *See* SEC Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, § 123.16 (May 23, 2007), *available at* https://www.sec.gov/divisions/corpfin/guidance/sec16interp.htm.

13

**F. Plaintiffs' Taxation Argument Is Circular and Begins With the Incorrect Assumption that the 2015 Withholding Is Non-Exempt**

Citing Section 83(c)(3) of the Internal Revenue Code,[7] Plaintiffs claim that the 2015 Withholding was not proper because taxation of the shares delivered upon vesting should have been deferred until six months after Peribere's November 2014 share purchase. (Doc. 3, p. 5, ¶ 16.) They further claim that because tax liability should have been deferred past the vesting date, any tax withholding was premature and could not be exempted under Rule 16b-3(e). This argument misapprehends both the SEC and IRS regulations.

First, and fundamentally, Plaintiffs incorrectly presume as a starting point for their tax analysis that the 2015 Withholding was a *nonexempt* transaction. Plaintiffs' erroneous assumption that the 2015 Withholding is a nonexempt transaction is explicit from the Amended Complaint. (Doc. 3 p. 5, ¶ 17) ("purchase of shares in a transaction *not exempt* from Section 16(b)"); (Doc. 3, p. 6, ¶ 19) ("income calculation and tax liability is deferred when there is a *non exempt* purchase within 6 months prior to an exercise in ESOs . . .".) This presumption fails in view of the clear language of SEC Rule 16b-3. Second, Plaintiffs mix two different legal concepts: short swing liability and taxation. Short swing liability is determined solely by applying the controlling SEC regulations to determine whether the subsequent disposition was specific and pre-approved. Later tax treatment of the subsequent disposition cannot determine the Section 16(b) exempt status of that subsequent disposition; the tax treatment flows *from* the Section 16(b) status. By using tax treatment to define Section 16(b) status, Plaintiffs have put the proverbial cart before the horse. Finally, Plaintiffs misconstrue the IRS regulations, in that the unrelated November 2014 open

---

[7] Section 83(c)(3) of the Internal Revenue Code provides that income a corporate insider realizes from the nonexempt sale or purchase of shares is subject to forfeiture and not transferable at the time of the disposition or acquisition. 26 U.S.C. § 83(c)(3) (2016). Therefore, taxation on those gains is deferred until the acquisition or disposition is no longer subject to a risk of forfeiture, in most cases, six months. 26 U.S.C. § 83(c)(3).

market purchase by Peribere has no impact on the tax timeline of the PSU-related transaction. *See e.g.,* 26 C.F.R. § 1.83-3(j)(2) Example 4 (iii) (2016) (no delay in taxation due to intervening unrelated purchase of common stock).[8]

## IV.    CONCLUSION

Section 16(b) was never intended to apply to routine tax withholding transactions like the one before this Court. The SEC rules promulgated thereunder confirm that the subject transaction is exempt from Section 16(b) coverage. Accordingly, based on the arguments and authorities set forth herein, Defendants respectfully submit that Plaintiffs' action should be dismissed with prejudice, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

This the 1st day of September, 2017.

NEXSEN PRUET PLLC

By: /s/ James C. Smith
James C. Smith
N.C. State Bar No. 8510
227 West Trade Street
Suite 1550
Charlotte, NC 28202
Telephone:  704.339.0304
Email: jsmith@nexsenpruet.com
*Attorney for Defendants*

---

[8] Here, the vesting and payment of the PSUs on February 16, 2015 was an exempt transaction under Rule 16b-3 and therefore could not subject Peribere to liability under Section 16(b). Consequently, no six-month restrictive period applied to those shares, and taxation was not deferred. The prior, unrelated November Acquisition does not change this analysis, as the Treasury Regulation examples make clear that an unrelated purchase of shares cannot extend or otherwise create a six-month restrictive period. 26 C.F.R. § 1.83-3(j)(2) Example 4(i), (iii). Therefore, the timing of the tax withholding was appropriate.

15

## CERTIFICATE OF SERVICE

The undersigned counsel of record for the Defendants hereby certifies that on this date he served copies of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING PLAINTIFFS' AMENDED COMPLAINT upon the Plaintiffs by depositing copies of same in the United States mail, postage prepaid, addressed to:

> John A. Olagues
> 413 Sauve Road
> River Ridge, LA 70123
>
> Ray Wollney
> 8331 Whiskey Preserve Circle #421
> Fort Myers, FL 33919

This 1st day of September, 2017

/s/ James C. Smith
James C. Smith