RECEIVED
CHARLOTTE, NC
SEP 15 2017
Clerk, US District Court
Western District of NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

John A. Olagues, Pro Se
413 Sauve Rd.
River Ridge, Jefferson Parish, La. 70123
olagues@gmail.com
504-305-4071
    and
Ray Wollney, Pro Se
8331 Whiskey Preserve Circle #421
Fort Myers, Lee County, Fl. 33919
rwollney1@comcast.net
239-690-7754
Shareholders of Sealed Air Corporation

RECEIVED
CHARLOTTE, NC
SEP 15 2017
Clerk, US District Court
Western District of NC

Plaintiffs

Private Right of Action to enforce
Section 16 (b)

CIVIL ACTION NO.
3:17CV68

Versus

Jerome Peribere, President and CEO
2415 Cascade Pointe Blvd.
Charlotte, Mecklenburg County, N.C. 28208
980-221-3235
www.sealedair.com
    and
Sealed Air Corporation
2415 Cascade Pointe Blvd.
Charlotte, Mecklenburg County N.C. 28208
980-221-3235
www.sealedair.com

Defendants

(i)

## Response to Defendants FRCP 12 c) Motion for Judgement on the Pleadings

1. On Page 1 of the FRCP 12 c) Motion, attorney James Smith enters Footnote 1, where he falsely claims that Olagues and Wollney have filed baseless short swing profit lawsuits seeking to extract nuisance settlements from litigants like defendants. To make a statement as in the footnote, Mr. Smith illustrates his lack of understanding of the facts and applicable law in those suits. I challenge him to explain why any of those claims were baseless.

2. After reading his 12 b-6 Motion and this 12 c) Motion, it is clear that he neither understands the facts or Section 16 b or its purpose. He also illustrates that he does not understand the applicable SEC Rules and IRC 83 c-3. He does understand that the purpose of the design of the Sealed Air Equity Compensation Plan and the Grant Agreement that govern the method of paying possible tax liabilities from vesting of PSUs is to allow Mr. Peribere and others to trade on inside information.

3. He nevertheless tries to deceive this court by making several false claims as to the facts and law, which are illustrated within this Response.

4. This suit filed by Olagues and Wollney, shareholders of Sealed Air Corp., against Jerome Peribere President and CEO of Sealed Air Corp arises under Section 16 (b) of the Securities Exchange Act of 1934 which is below with parts highlighted.

*"**(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer,** any profit realized by him from **any** purchase and sale, or **any** sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*

*Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in*

1

*behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.*

***This subsection shall not be construed to cover*** *any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or **any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.**"*
----------------- *End of Section 16 (b)*

5. Among other things, section 16 (b) has as its purpose to prevent the unfair use of inside information by making **any** profit from **any** purchase and sale, or **any** sale and purchase within 6 months recoverable by the issuer. The SEC is allowed to exempt transactions that are "not comprehended within the purpose of section" 16 (b). The statue is one of strict liability, where motive or intent is not a consideration required to be shown.

6. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)" by a shareholder in order to enforce section 16 (b) and recover for the issuer, short-swing insider trading profits realized by defendant, Jerome Peribere while he was a statutory insider of Sealed Air Corporation.

7. Jerome Peribere, at all relevant times was an officer of Sealed Air Corporation within the meaning of Section 16(b) of the 1934 Act.

8. The requirements for a successful enforcement of Section 16 (b) by shareholders of the issuer against officers or directors are the following a) - g):

a. The officer or director must be an insider when the purchase of the equity securities is made and when the sale (i.e. disposition) of the equity securities is made.
b. There must be a non exempt market purchase by an officer or director .
c. There must be a non exempt disposition (sale) of equity securities from the insider to the issuer or to a market buyer.
d. The non exempt purchase and non exempt sale of the equity security must occur within less than 6 months of each other.

2

e. There must be a profit made between the purchase and the sale of the equity securities.
f. The issuer must be timely notified of the violation of 16 b, but refused to seek recovery of the profits.
g. The plaintiff must own equity securities of the issuer when the suit is instituted.

9. All of the necessary elements of a violation of section 16 (b) by Mr. Peribere are present here as are the necessary elements for recovery of profits gained from the violation.

10. The attorneys for Mr. Peribere in this FRCP 12 c) motion are merely attempting to twist the meaning of words and phrases of 16 (b), the SEC Rules and their clarifications by the SEC staff and the wording of Sealed Air Grant Agreement. Their purpose is to deceive the court as to the purpose of 16 (b) and the relevant SEC Rules.

11. The transactions shown on Form 4s filed with the SEC by the defendant are listed below: The attached Documents **(Exhibit A)** from SEC Form 4s show the relevant matched transactions by Mr. Jerome Peribere, who was an officer of Sealed Air Corp. when the purchase of 13,094 shares in the market or private purchase was made and a disposition (sale) was made by delivering shares for a premature tax liability that was deferred until May 15, 2015. **Exhibit A** shows a Code "A" entered into column 3 in Table I, whereby 141,697 shares of common stock was acquired by Mr. Peribere upon the vesting of the 141,697 Performance Share Units.

12. Of the 141,697 PSUs vesting, 61,411 shares were retained by Sealed Air Corp for the possible discretionary withholding of taxes by Sealed Air. Apparently Sealed Air Corp (the company) used the discretion and withheld the shares, as allowed by the PSU Grant Agreement and paid the share value in cash for the premature taxes as shown on the Form 4 of 2/16/2015. The company's decision to withhold the shares, was substantially influenced by Mr. Peribere, if not completely controlled by Mr. Peribere.

.

3

**Jerome Peribere**

| Shares Purchased In the market | Date | Price | Shares Disposed to the issuer | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 13,096 | 11/19/14 | $38.17 | 13,096 | 2/16/15 | $46.05 | $103,196 |

13. Plaintiffs notified Sealed Air Corp. of the facts alleged above (the "Demand"). Neither Sealed Air Corp. nor its attorneys agreed to Plaintiffs request for disgorgement of the profits from defendant and refused to file suit to recover such profits totaling $103,196 after notices were received by Sealed Air Corp.

14. Plaintiffs' claim that the transactions were "comprehended within the purpose of Section 16 b" of the 1934 Securities Act and the SEC can not exempt such a Transactions. Also, there was no proper approval in advance, by the Compensation Committee or the Board of Directors, of the dispositions from Defendant to Sealed Air Corp. which is a second reason why the transactions could not be exempted by SEC Rules. Proper approval requires that the specific terms of the dispositions must be approved in advance and must be consistent with SEC Rule 16 b-3(e) and Note (3). None of the specific requirements were made to achieve an approval pursuant to SEC Rule 16 b-3(e).

15. Below in blue is a paragraph cited on page 5 of the Amended Answer filed on 5/15/2017 by Attorney for Mr Peribere from Exhibit 10.1 from Sealed Air Corporation Form 10-Q for the quarter ended March 31, 2012.

"Units earned at the end of the performance Period, if any, will be paid in actual shares of the Company's stock, less the number of shares that **may** be withheld to satisfy applicable withholding taxes".

16. It says that a part of the amount of shares of stock due to Mr. Peribere will be held back and **may** possibly be used, instead of cash from Mr. Peribere, for a tax liability payment.

4

17. Mr. James Smith also cites the paragraph below from the

### Sealed Air 2005 Contingent Stock Plan

Section 18.  *Tax Withholding.*   Each Award Grant incident to the Plan shall make appropriate provisions for the withholding of any federal, state or local taxes and any other charges that may be required by law to be withheld by reason of an Award, the issuance of Common Stock under the Plan or the reacquisition of such Common Stock by the Corporation. The Corporation may cause all or any portion of any tax withholding obligation or other charges described in the preceding sentence to be satisfied by the Corporation withholding from the shares of Common Stock covered by an Award a number of shares (rounded down to the nearest whole share) with an aggregate Fair Market Value on the date that such withholding obligation arises equal to the aggregate amount of such taxes and other charges. Regardless of any other provision of the Plan, the Corporation may refuse to issue or to deliver to the Participant certificates or a book entry statement representing shares covered by an Award until the Participant to whom the Award was made complies with any withholding obligation."

18. The above *Tax Withholding* paragraph above says that the Corporation (i.e. the issuer) **may cause all or any portion of the shares** held back after vesting for the tax liability payment. This certainly means that the Corporation (i.e. the issuer) had discretion to use the retained shares or Mr. Peribere cash for Mr. Peribere's tax liability. So the Company (i.e. the issuer), substantially controlled by President and CEO Mr. Peribere, made the discretionary decision to require that the shares be kept by the Company (the issuer) and that the company delivered its cash to the IRS to pay the Tax liabilities on 2/15/2016. This is confirmed by the entry of code "F" into column 3 of Table 3 of the SEC Form 4 of 2/16/2015.

19. If the Company (i.e. the issuer) was required to withhold Mr. Peribere's shares which were required to be used as payment for a tax liability as all discretion was removed, then the disposition of shares to the issuer would be exempt from 16 b. Of course this was not the case here.

20. These two paragraphs( mainly the parts in blue above) are what the attorneys rely on as the alleged approval pursuant to Rule 16 b-3(e) resulting in an exemption for the disposition (sale) to Sealed Air Corp. of the 13,096 shares on 2/15/2016. The SEC would conclude that the above paragraph "Tax Withholding" **would not satisfy** the specific requirements to achieve an approval of the discretionary disposition as illustrated in the paragraphs below.

21. On May 23, 2007, the SEC staff answered a question seeking clarification of the necessary requirements of an exemption from 16 (b) via SEC Rule 16 b-3(d) and 16 b-3(e).

5

22. See the Q and A, below, to and from the Staff of the SEC below.........Question # 123.16 from May 23, 2007

**23. Question:** Would approval of a grant that by its terms provides for **automatic** reloads satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants?
**Answer:** Yes. Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis. The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right.
 [May 23, 2007]   ------------------End of the Q and A.

24. The SEC certainly considered the shares withheld by the issuer for a possible tax liability payment to be a "sale" from the officer to the issuer with the cash paid not to the selling officer but to the IRS and state tax officials.

25. There certainly was no satisfaction of the specificity of approval requirements under SEC Rule 16 b-3(e) in the case of Mr. Peribere disposition yo Sealed Air on 2/16/2016 and therefore no exemption for the sale(disposition).

26. The SEC also clarified the scope of the phrase "comprehended within the purpose of section 16 (b)" in their **August 3, 2005 release [Release Nos. 33–8600; 34–52202; 35– 28013; IC–27025; File No. S7–27–04] RIN 3235–AJ27** whereby they adopted the statement by the American Bar Association paragraphs of which are below: and the paragraphs of the New York State Bar Association which are below.

27. ABA paragraphs below were adopted by the SEC in the SEC Release August 3, 2005:

 "**We agree that transactions between the issuer and its officers and directors present little opportunity for the abuses to which Section 16(b) is directed when those transactions are subject to the "gate keeping conditions" set forth in the rule ..................because the key consideration of the statute is the absence of the ability to take advantage of the other party on the basis of inside information."**

6

28 The NYSBA paragraphs say on August 9, 2004:

"Rule 16b-3 is entirely consistent with the intent of Congress in enacting Section 16(b), since **it exempts only transactions involving parties on an equal footing from the standpoint of knowledge of inside information.** Market transactions are not exempted by the Rule, and gate-keeping conditions exist to prevent overreaching. Given these circumstances, it is irrelevant to the purposes of Section 16(b) whether the transactions covered by the Rule are compensation-related or not. **What is critical is that the Rule does not present the opportunities for the misuse of inside information, which the statute is intended to prevent**".

29. Essentially the SEC adopted the views of the ABA and the NYSBA that if the insider had a superior position in dealings with the issuer, the transactions were not exempt from 16 (b) because, the transactions did not meet the approval (i.e "gate keeping") requirements.

30. The Shares Purchased mentioned in paragraph 5 above was a market transaction non exempt from section 16 b.

31. The share disposition to Sealed Air Corp. was for alleged tax withholdings by the issuer, but there was no income calculation or tax liability at the time of the disposition of the 13,096 as the income calculation and tax liability was deferred until 6 months after the market purchase of the 13,096 shares. The disposition of a premature tax liability was not approved with the required specificity to achieve an exemption from Section 16 (b) via of SEC Rule 16 b-3(e).

32. The confirmation of the lack of specificity of approval and confirmation of the disposition to the issuer being "comprehended within the purpose of section 16 (b)" is illustrated by the insertion of Code "F" into column 3 of Table 1 of the SEC Form 4 attached as **Exhibit A**. The entry of code "F" does not state that the disposition to the issuer is exempt from section 16 (b) but merely says that the disposition of the shares to the issuer is "Payment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16 b-3".

7

33. Had Mr. Peribere believed that the disposition to the issuer was exempt from section 16 (b) via SEC Rule 16 b-3(e), as the his attorneys now claim, he should have entered a code "D" in column 3 of Table 1 of the SEC Form 4.

34 . The possible tax liability was deferred past the vesting date pursuant to IRC 83 c-3, making it such that on the day of the stock disposition, there could be no exemption via Rule 16 b-3(e) for such premature disposition for a non existent tax liability.

35. Deferral of the income calculation and tax liability for the vesting of the PSUs is confirmed by IRC 83 c-3 and interpretations of it as shown below.

*IRC 83 c-3:*

*Sales which may give rise to suit under section 16(b) of the Securities Exchange Act of 1934*

*So long as the sale of property at a profit could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934, such person's rights in such property are—*
*(A)    subject to a substantial risk of forfeiture, and*
*(B)    not transferable.*

36. IRC 83 c-3 makes a receipt of shares from vesting of PSUs, Restricted stock, and RSUs, etc. subject to forfeiture and non transferable and therefore the tax liability was deferred to when a sale was not subject to a risk of forfeiture and was transferable.

37. **Below is the paragraph from an IRS Bulletin of March 17, 2014:**
*Specifically, practitioners asked whether the* **purchase of shares** *in a transaction not exempt from section 16(b) of the Securities Exchange Act of 1934* **prior to the exercise of a stock option** *that would not otherwise give rise to section 16(b) liability would defer taxation of the stock option exercise. Treasury and the IRS do not believe that such a non-exempt purchase of shares would defer taxation of the subsequent stock option exercise.*

8

*38. This result is consistent with Example 3 of § 1.83–3(j)(2). In response to these requests for clarification, Treasury and the IRS have revised Example 4 of proposed regulation § 1.83–3(j)(2) to address the situation raised*

39. Few practitioners understand IRC 83 c-(3) and are confused by the IRS examples. They do not understand the IRS clarification and believe that IRC 83(c) does not apply in any cases.

40. Judge Berzon of the Ninth Circuit Court of Appeals in Strom v. U.S.

Nos. 09–35175, 09–35197. Decided: April 06, 2011

illustrates in the verbatim quote below, that income calculation and tax liability is deferred when there is a non exempt purchase within 6 months prior to an exercise of ESOs at a price lower than the stock price on the day of exercise. This concept also applies to vesting of Restricted stock, DSUs and RSUs.

BERZON, Circuit Judge:

*Ordinarily, when an employee is compensated with nonstatutory stock options that do not have a readily ascertainable fair market value at the time of the grant, the employee realizes income for tax purposes upon exercising the options.1 See 26 U.S.C. §§ 83(a) & (e)(3)-(e)(4); 26 C.F.R. § 1.83-7(a). The taxpayer is taxed on an amount equal to the fair market value of the stock on the date of exercise minus the option price paid for the stock. See 26 C.F.R. §1.83-1(a)(1); id. §1.83- 7(a)*

*Internal Revenue Code § 83(c)(3), however, allows taxpayers to defer recognition and valuation of income so long as a profitable sale of the stock acquired through the exercise of the options "could subject a person to suit under section 16(b) of the*

*Securities Exchange Act of 1934." 26 U.S.C. § 83(c)(3).*

*Section 16(b), in turn, forbids a corporate insider from profiting on a purchase made within six months of a sale (or a sale made within six months of a purchase) of the corporation's stock. See 15 U.S.C. § 78p(b). If a taxpayer is permitted to defer tax*

9

*consequences under IRC § 83(c)(3), the taxpayer will be later taxed on an amount equal to the fair market value of the stock on the date that § 83(c)(3) no longer applies minus the option price paid for the stock. See 26 U.S.C. § 83(a); 26 C.F.R. § 1.83-1(a)(1).*

---

41. The Ninth Circuit Ruling is the highest authority on how IRC 83 c-(3) works. Some attorneys claim that certain IRS examples from the IRS refute the Ninth Circuit, the March 17, 2014 Bulletin and the clear language of IRC 83 c-3.

## Summary

42. Plaintiffs have clearly illustrated that all factual and legal elements for an enforcement of section 16 (b) are present here.

43. The legal support comes from The Ninth Circuit Court of Appeals in the Strom v. U.S. case, the IRS Bulletin of March 17, 2014, the May 23, 2007 Question and Answer to and from the SEC, the letters of the ABA and the NYSBA to the SEC and the SEC's release of August 3, 2015 including the ABA and NYSBA statements.

44. The defendant can cite no legal authority to support their position other than the Donoghue v. Casual Male decision, which has been contradicted by the SEC in the May 23, 2007 Q and A. The Donoghue v. Casual Male decision also exempts from section 16 (b) transactions that are "comprehended within the purpose of section 16 (b)" which is not allowed.

45. Finally the quote below from the U.S. Supreme Court in Reliance Electric v. Emerson Electric 404 U.S. 418 (1972), supports the Plaintiffs position:

**"To be sure, where alternative constructions of the terms of § 16 (b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders."**

46. The amount to be at a minimum of $103,196 which is the total profit received from non exempt purchases and non exempt dispositions.

Respectfully Submitted

*/s/ John Olagues*　　　DATED this 11th day of September, 2017.
John Olagues

Ray Wollney

11

# Exhibit A

SEC Form 4 s filed by Jerome Peribere

SEC Form 4

FORM 4

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

| 1. Name and Address of Reporting Person* <br> Peribere Jerome A | 2. Issuer Name and Ticker or Trading Symbol <br> SEALED AIR CORP/DE [ SEE ] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last)        (First)        (Middle) <br> C/O SEALED AIR CORPORATION <br> 200 RIVERFRONT BOULEVARD | 3. Date of Earliest Transaction (Month/Day/Year) <br> 11/19/2014 | X Director        10% Owner <br> X Officer (give title below)        Other (specify below) <br> President and CEO |
| (Street) <br> ELMWOOD PARK    NJ    07407 <br> (City)    (State)    (Zip) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br> ☐ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 11/19/2014 | | P | | 13,096 | A | $38.1724 | 13,096 | I | By GRAT(1) |
| Common Stock | | | | | | | | 187,711 | D | |
| Common Stock | | | | | | | | 1,112 | I | Profit-Sharing Plan |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. On November 19, 2014 a grantor retained annuity trust for the benefit of Mr. Peribere and his five children purchased 13,096 shares at an average price of $38.1724. The price reported in column 4 is a weighted average price. These shares were purchased in multiple transactions at prices ranging from $38.09 to $38.25, inclusive. The reporting person undertakes to provide to Sealed Air Corporation, any security holder of Sealed Air Corporation, or the staff of the Securities and Exchange Commission, upon request, full information regarding the number of shares sold at each separate price within the range set forth in this footnote.

Jerome A. Peribere        11/20/2014
** Signature of Reporting Person        Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

Case 3:17-cv-00068-RJC-DCK    Document 12    Filed 09/15/17    Page 14 of 15

# SEC Form 4

## FORM 4

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| 1. Name and Address of Reporting Person* <br> Peribere Jerome A <br><br> (Last) (First) (Middle) <br> C/O SEALED AIR CORPORATION <br> 8215 FOREST POINT BOULEVARD <br> (Street) <br> CHARLOTTE  NC  28273 <br> (City) (State) (Zip) | 2. Issuer Name and Ticker or Trading Symbol <br> **SEALED AIR CORP/DE** [ SEE ] <br><br> 3. Date of Earliest Transaction (Month/Day/Year) <br> 02/16/2015 <br><br> 4. If Amendment, Date of Original Filed (Month/Day/Year) | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br> X Director       10% Owner <br> X Officer (give title below)    Other (specify below) <br> President and CEO <br><br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br>   Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/16/2015 | | A | | 141,697 | A | (1) | 329,408 | D | |
| Common Stock | 02/16/2015 | | F | | 64,411 | D | $46.05 | 264,997 | D | |
| Common Stock | | | | | | | | 13,096 | I(2) | By GRAT |
| Common Stock | | | | | | | | 1,112 | I | Profit-Sharing Plan |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Performance Share Unit (PSU) award for the 2012-2014 performance period.

2. On November 19, 2014 a grantor retained annuity trust for the benefit of Mr. Peribere and his five children purchased 13,096 shares at an average price of $38.17241. The price reported in column 4 is a weighted average price. These shares were purchased in multiple transactions at prices ranging from $38.09 to $38.25, inclusive. The reporting person undertakes to provide to Sealed Air Corporation, any security holder of Sealed Air Corporation, or the staff of the Securities and Exchange Commission, upon request, full information regarding the number of shares sold at each separate price within the range set forth in this footnote.

                                                                  Jerome A. Peribere          02/18/2015
                                                              ** Signature of Reporting Person    Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.
Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.