IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-cv-00068-RJC-DCK

JOHN A. OLAGUES and RAY WOLLNEY,

    Plaintiffs,

v.

JEROME PERIBERE and SEALED AIR
CORPORATION,

    Defendants.

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' RULE 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS
DISMISSING PLAINTIFFS' AMENDED
COMPLAINT

Defendants Jerome Peribere and Sealed Air Corporation (the "Company"), by and through counsel, and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule(s)"), respectfully submit this reply brief in support of their Motion for Judgment on the Pleadings Dismissing Plaintiffs' Amended Complaint (the "Motion").

## I. INTRODUCTION

The arguments Plaintiffs advance in their response brief and the Amended Complaint do not differ from those asserted in another of Mr. Olagues' cases, *Jordan v. Flexton*, which arguments were summarily dismissed. *See* Pl.'s Resp. 12 b-6 Mot. by Defs., ECF No. 15, *Jordan v. Flexton*, No. 4:16-cv-03316 (S.D. Tex. Mar. 6, 2017); Order Granting Defs.' Mot. Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 23, *Jordan v. Flexton*, No. 4:16-cv-03316 (S.D. Tex. Apr. 26, 2017); *see also* Defs.' Reply Mem. Supp. Mot. Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) at p. 1 n.5, ECF No. 17, *Jordan v. Flexton*, No. 4:16-cv-03316 (S.D. Tex. Mar. 13, 2017) (noting that Mr. Olagues was operating as the plaintiff's "consultant"). As the court observed in *Olagues v. Icahn*, here "[t]he chain of counterfactual hypotheses, assumptions, and inferences that form the basis of Plaintiff's claim is a bridge too far to establish that Defendants must disgorge

1

more in profits than they already have—maybe five or six bridges too far." *Olagues v. Icahn*, 1:15-CV-0898-GHW, 2016 WL 1178777, at *6 (S.D.N.Y. Mar. 23, 2016), *aff'd,* 866 F.3d 70 (2d Cir. 2017).

Rather than attempt to improve upon these already-rejected arguments, Plaintiffs regurgitate them and impermissibly add baseless factual allegations that do not appear in the pleadings and are, in any case, disproven by the pleadings and attached materials. Despite Plaintiffs' unsupported claims to the contrary, Defendants are entitled to judgment on the pleadings as a matter of law. The complained-of withholding (the "February Withholding") was a specific, pre-approved tax withholding transaction that was exempted by the Securities and Exchange Commission (the "SEC") from the reach of Section 16(b). It therefore cannot give rise to a claim for disgorgement of short-swing profits, regardless of whether the relevant plans (the "2005 Plan" and the "PSU Document") create an "automatic" withholding transaction (as they clearly do).

In sum, the pleadings establish that the February Withholding was an exempt transaction under Section 16(b), and therefore neither of the Defendants can be subject to short-swing profit liability.

## II. ANALYSIS

### A. Rule 16b-3 Exempts a Tax Withholding "Right"

Where dispositions are approved in advance by a committee composed solely of non-employee directors, Rule 16b-3, codified at 17 C.F.R. § 240.16b-3, "exempt[s] dispositions of issuer equity securities to the issuer pursuant to: (1) the *right* to have securities withheld, or to deliver securities already owned, either in payment of the exercise price of an option or to satisfy the tax withholding consequences of an option exercise or the vesting of restricted securities . . . ." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Releases

2

Case 3:17-cv-00068-RJC-DCK   Document 14   Filed 09/22/17   Page 2 of 10

Nos. 34-37260, 35-26524, 61 Fed. Reg. 30,376, 30,381, 1996 WL 324486 (June 14, 1996 (emphasis added)). The February Withholding was properly pre-approved and was therefore exempt pursuant to Rule 16b-3.

Rule 16b-3 does not, as Plaintiffs contend, require that tax withholding occur "automatically" under the pre-approved plan. As made evident in Note 3 to Rule 16b-3, where a subsequent "tax withholding *right*" is approved in advance, the transaction does not require further specific approval. The use of the word "right" is significant. It indicates that a pre-approved, exempt transaction may include a privilege that may or may not be exercised.[1] Plaintiffs' contrary construction requiring "automatic" tax withholding converts the statutory "right" into a mandatory requirement. That reading impermissibly renders meaningless the regulation's use of the term, "right." Plaintiffs' reading is therefore both nonsensical and contrary to the plain meaning of the regulation. Indeed, the examples provided by the SEC demonstrate this latitude, and directly contradict Plaintiffs' attempt to engraft an "automatic" requirement onto the regulations. (Doc. No. 11, pp. 10–11.)

### B. The SEC Q & A Does Not Require an "Automatic" Tax Withholding Here

Despite the SEC's clear and binding regulations establishing that a tax withholding transaction need not be "automatic," Plaintiffs insist that an informal SEC Q & A pertaining to automatic reload options defeats clear regulatory language. Reference to this informal interpretation and Plaintiffs' reimagining thereof is irrelevant for several reasons. First, agency interpretations are not entitled to deference where they conflict with an unambiguous regulation.

---

[1] "When a statute does not define a term, we typically give the phrase its ordinary meaning." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 123 S. Ct. 1702, 1706–07 (2012). Merriam-Webster defines a "right," as used in this context, as "something that one *may* properly claim as due." *Right*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/right?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited June 15, 2017) (emphasis added); *see also Right*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Something that is due to a person by just claim, legal guaranty, or moral principle."). Nothing in that definition implies that an individual in possession of a right *must* claim such right.

*Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011) ("[D]eference is warranted only when the language of a regulation is ambiguous." (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 588, 120 S. Ct. 1655, 1663, 146 L. Ed. 2d 621 (2000))). Second, the referenced Q & A does not stand for the proposition that Plaintiffs advance. For reasons previously addressed in Defendants' memorandum in support of this Motion, the Q & A does not speak to tax withholding rights generally, but only to automatic reload options. The interpretation simply notes that if an original option grant provides an automatic reload of the option grant, that subsequent reload does not require renewed approval under Rule 16b-3(d). If the option grant also included a tax withholding right, it similarly did not require renewed approval upon reload.

### C. Peribere's use of Transaction Code "F" Instead of Transaction Code "D" Does Not Reflect that the Transaction Was Non-Exempt

Plaintiffs also argue that Peribere's use of Transaction Code "F" on his Form 4 report is an admission that the February Withholding was not exempt. In fact, the use of Code "F" on the reporting form was proper and reflected an exempt disposition to the issuer.

The instructions to Form 4 direct the reporting person to "[u]se the code that most appropriately describes the transaction." *Form 4 Statement of Changes of Beneficial Ownership of Securities*, Securities and Exchange Commission, https://www.sec.gov/files/form4data%2C0.pdf, (last visited Sept. 20, 2017). The seventeen transaction codes available for use on the Form 4 are categorized as follows: (1) General Transaction Codes; (2) Rule 16b-3 Transaction Codes; (3) Derivative Securities Code (Except for transactions exempted pursuant to Rule 16b-3; (4) Other Section 16(b) Exempt Transaction and Small Acquisition Codes (except for Rule 16b-3 codes above); and (5) Other Transaction Codes. *Id.* Both Transaction Codes "D" and "F" are listed under "Rule 16b-3 Transaction Codes." *Id.*

4

Here, Peribere had his choice between transaction code "D," reflecting a disposition to the issuer of issuer equity securities pursuant to Rule 16b-3(e), or transaction code "F," reflecting payment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3. *Id.* Both codes denote an exempt transaction under Rule 16b-3. Although "D" would have covered the exempt transaction, "F" was a more specific, and therefore more appropriate, description. Just as code "A," describing a grant, award or other acquisition pursuant to Rule 16b-3(d), includes code "M," describing an exercise or conversion of derivative security exempted pursuant to Rule 16b-3, "D" includes "F." Consequently, the use of Transaction Code "F" indicates the Company's understanding and intent that the February Withholding *was* exempt.

### D. The February Withholding Does Not Merit the Protection of Section 16(b)

The policy statements concerning the purpose of Section 16(b) that Plaintiffs reference in Paragraphs 26 through 29 of their response brief actually support Defendants' assertion that the February Withholding is not within the contemplated scope of Section 16(b). For example, Plaintiffs note, in bold typeface, that "**[w]hat is critical is that the Rule does not present the opportunities for the misuse of inside information, which the statute is intended to prevent.**" (Doc. No. 12 ¶ 28.) Here, there could be no misuse of inside information to the disadvantage of the Company, because the shares were automatically withheld at the Organization and Compensation Committee's (the "Committee") direction, not Peribere's. This is precisely the sort of gatekeeping and safeguard that has been expressly approved and exempted from Section 16(b)'s reach. *See Donoghue v. Casual Male Retail Grp., Inc.*, 427 F. Supp. 2d 350 (S.D.N.Y. 2006) (determining that a pre-approved, non-automatic net exercise feature of an option award was exempt).

5

In the face of overwhelming legal authority contrary to their position, Plaintiffs resort to describing fictional events not referenced in the pleadings. Specifically, they contend that the Company retained the shares for "possible discretionarywithholding of taxes[2]" and that Peribere "substantially influenced" or even "completely controlled" the Company's subsequent decision to withhold them. (Doc. 12 ¶ 12.) In support of this absurd proposal, Plaintiffs cite language from the PSU document, stating that awards "will be paid in actual shares of Company common stock, less the number of shares that may be withheld to satisfy applicable withholding taxes." (Doc. 12 ¶ 15 (citing Doc. No. 7-4 p. 78).)

Plaintiffs' belated assertion that Peribere controlled the tax withholding decision not only falls well outside of the pleadings, but is flatly contradicted by the 2005 Plan. Section 4 of the 2005 Plan provides,

> The Plan shall be administered by the Committee, which shall be composed of not less than three Directors chosen from time to time by the Board of Directors. No Director shall be eligible or continue to serve as a member of the Committee unless such person has been determined to be an "independent director" under applicable stock exchange standards and is an "outside director" within the meaning of regulations under Code section 162(m) and a "non-employee director" within the meaning of Exchange Act Rule 16b-3.

(Doc. No. 7-5, p. 4, § 4.) In other words, it is evident from the pleadings and materials attached thereto that the Committee had *exclusive and plenary* authority to administer share awards and attendant tax withholdings. Peribere had no control over any decision to specifically withhold his shares. Consequently, the February Withholding presents no opportunity for misuse of inside information and therefore does not fall within the ambit of Section 16(b).

---

[2] Plaintiffs' new and unsupported allegation that the shares were retained for "possible discretionary" tax withholding makes no sense. Any of Peribere's shares that were retained by the Company were necessarily retained for tax withholding. The plain language of the 2005 Plan and corresponding PSU Document does not permit random retention of Peribere's shares for purposes other than tax withholding.

### E. The February Withholding Was Automatic

Although the SEC does not require tax withholding transactions to be "automatic," the February Withholding actually *was* automatic. Plaintiff's belated assertion of an illusory discretionary step between retaining the shares and withholding them for taxes are without merit. In contending that the February Withholding was not an automatic function of the 2005 Plan and the PSU Document, Plaintiffs focus on the following language: "[PSUs] earned at the end of the Performance Period, if any, will be paid in actual shares of Company common stock, less the number of shares that may be withheld to satisfy applicable withholding taxes." (*See* Doc. 7-4 p. 78.)

Plaintiffs admit that their entire theory depends upon one word—"may"—to render any tax withholding non-automatic and discretionary. (*See* Doc. No. 12 ¶ 19 ("If the Company (i.e. the issuer) was required to withhold Mr. Peribere's shares which were required to be used as payment for a tax liability as all discretion was removed, then the disposition of shares to the issuer would be exempt from 16 b.").) While Defendants dispute Plaintiffs' incorrect interpretation of Rule 16b-3 as requiring "automatic" withholding, the point is mooted by the mandatory function of tax withholding in the PSU Document.

The PSU Document mandates that awards "will be paid in actual shares," less the number of shares withheld for tax purposes. As observed in Defendants memorandum in support of this Motion, use of the word "may" merely refers to the variable amount of tax withholding that will be taken out of the share disposition. (Doc. No. 11, p. 13.) This withholding amount could be zero if, for example, the grantee is a resident of a state with no income tax, like Florida, or if the grant recipient is an independent contractor, in which the Company is not obligated or entitled to withhold a portion of the award as it would if the award were part of an employee's wages. The basis for using the word, "may," in the PSU Document is not to reserve subsequent discretion, but

7

to account for the amount by which a withholding will vary, or the circumstances in which the withholding amount is zero.

In short, even assuming that tax withholding must be automatic to qualify for Rule 16b-3 exemption, it is evident from the pleadings that the February Withholding was an automatic function of the pre-approved 2005 Plan, PSU Document, and the offer letter to Peribere. (*See* Doc. No. 7-1; Doc. 7-4 pp. 77–88; Doc. 7-5.) Consequently, the February Withholding was clearly exempt and does not give rise to liability for any alleged short-swing profits.

### F. Plaintiffs' Tax Deferral Is Invalid

Similarly unavailing is Plaintiffs' continued invocation of the defective argument that Section 83(c)(3) of the Internal Revenue Code proves that the February Withholding is non-exempt. Essentially, Plaintiffs contend that because the February Withholding was non-exempt, Section 83(c)(3) provides that it was subject to a substantial risk of forfeiture, and was therefore non-exempt. This circular argument is premised upon the demonstrably false starting assumption that the February Withholding was non-exempt. Similarly, Plaintiffs' sole cited legal authority, *Strom v. U.S.,* 641 F. 3d 1051 (9th Cir. 2011), deals with a "non exempt purchase," and thus is irrelevant to the facts at issue here. (Doc. No. 12 ¶ 40.) Finally, Plaintiffs' tax argument ignores controlling IRS regulations, at Treas. Reg. §1.83-3(j), that were issued subsequent to the lone cited judicial opinion. (Doc. No. 11 pp. 14–15.) The Company would likely have faced tax liability to the IRS had it not withheld on the PSUs when it did in light of the IRS regulations.

Because the February Withholding is exempt, Plaintiffs' circular tax deferral argument is unpersuasive and irrelevant.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs theories regarding short-swing profit liability are "five or six bridges too far" to establish that Defendants must disgorge any profits from the February

Withholding.  *Icahn*, 1: 2016 WL 1178777, at *6.  Defendants are consequently entitled to dismissal of Plaintiff's claims with prejudice as a matter of law.

Respectfully submitted, this the 22nd day of September, 2017.

>NEXSEN PRUET PLLC
>
>By: /s/ Kathleen D.B. Burchette
>   James C. Smith
>   N.C. State Bar No. 8510
>   Kathleen D.B. Burchette
>   N.C. State Bar No. 45891
>   227 West Trade Street
>   Suite 1550
>   Charlotte, NC 28202
>   Telephone:  704.339.0304
>   Email: jsmith@nexsenpruet.com
>         kburchette@nexsenpruet.com
>   *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned counsel of record for the Defendants hereby certifies that on this date she served copies of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING PLAINTIFFS' AMENDED COMPLAINT upon the Plaintiffs by depositing copies of same in the United States mail, postage prepaid, addressed to:

> John A. Olagues
> 413 Sauve Road
> River Ridge, LA 70123
>
> Ray Wollney
> 8331 Whiskey Preserve Circle #421
> Fort Myers, FL 33919

This 22nd day of September, 2017

> /s/ Kathleen D.B. Burchette
> Kathleen D.B. Burchette