John A. Olagues, Pro Se
413 Sauve Rd.
River Ridge, Jefferson Parish, La. 70123
olagues@gmail.com
504-305-4071
    And
Ray Wollney, Pro Se            Civil Action No.3:17-cv-00068-RJC-DCK
8331 Whiskey Preserve Circle #421
Fort Myers, Lee County, Fl. 33919
rwollney1@comcast.net
239-690-7754
Shareholders of Sealed Air Corporation

    Plaintiffs

    Versus

Jerome Peribere, President and CEO Sealed Air Corporation
2415 Cascade Pointe Blvd.
Charlotte, Mecklenburg County, N.C. 28208
980-221-3235
    And
Sealed Air Corporation
2415 Cascade Pointe Blvd.
Charlotte, Mecklenburg County N.C. 28208
980-221-3235
www.sealedair.com

    Defendants

1

## PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

Plaintiffs John Olagues and Ray Wollney hereby file this Response to the Court's Order To Show Cause dated July 11, 2018, and, for the reasons stated herein, respectfully request that the Court not dismiss this action.

1. Plaintiff Wollney was not aware prior to filing the complaint of any prohibition of Plaintiffs appearing pro se in this 16 (b) suit.

Plaintiff Olagues was not aware of this either.

In Olagues v. Dimon, No. 1:14-cv-4872-GHW, 2014 U.S. Dist. LEXIS 197115 (S.D.N.Y Aug. 28, 2014) Plaintiff Olagues was ordered by the Court to show cause as to why the action should not be dismissed for lack of counsel.

Olagues showed cause to the Court. There was also oral argument. The Court did not rule to dismiss the case. Shortly after this Olagues retained attorney Jack Fruchter.

The other cases cited in the Court's Order which are Olagues v. Remondi, Civ. No. 1:17-CV- 01004 (D. Del. Mar. 28, 2018), Olagues v. Ravidh, Civ. No. 2:17-cv-00938 (C.D. Cal. Jan. 5, 2018), Olagues v. Steinour 2018 U.S. Dist. LEXIS 1701, Olagues v. Timken, Civ. No. 5:17-cv-01870 (N.D. Ohio Jan. 3, 2018 and Olagues v. Muncrief 2017 WL 2471062 all took place after the filing of this case.

2. Derivative and representative cases are cases where the issuer was harmed and the plaintiff was a shareholder at the time of the violation.

A 16 (b) case only requires that a plaintiff shareholder be a shareholder a the time the suit is filed. And there is no requirement that the shareholder was a shareholder at the time the damages took place.

2

Nowhere do we find a requirement that the issuer was damaged nor the security holder was an owner prior to or when the violation took place.

**Below is a verbatim copy of Section 16(b) of the 1934 Act, with the relevant parts in bold.**

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, **any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer** ( other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, **shall inure to and be recoverable by the issuer**, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

**Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit** within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

3

Below are the parts highlighted above:

**1. Any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer shall inure to and be recoverable by the issuer,**

**2. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit.**

Exactly what is being stated in the above highlighted sentences?

Surely the issuer can sue for recovery by the issuer. Surely the security owner may sue if the issuer refuses to sue and recover.

There is nothing in the above language or anywhere in section 16 (b) that indicates or suggests that the suit to recover such profits by the owner of any security must have an attorney representing him/her.

Assume for a moment that Section 16 (b) required an attorney (which does not seem to be the case), when the owner of a security instituted a suit for recovery of the profits from the insider to the issuer. Would the attorney be representing the owner of a security or would the attorney be representing the issuer, which refused to sue?

If the attorney was representing the issuer, the issuer could dismiss the case and have the result that the issuer and the top executive wished (i.e. no suit).

If the attorney was representing the owner of a security, the status of the owner of the security would be the same as if he had no attorney (i.e. pro se). When an attorney represents the security holder, the attorney does not represent the Issuer, notwithstanding that the issuer is the major beneficiary of a successful Section 16 (b) suit.

4

But when the issuer refuses to sue, the suit has the owner of a security as the only Plaintiff, possibly pro se and possibly represented by an attorney.

The idea that the owner of securities is required to have an attorney representing him/her in a Section 16 (b) suit is unsupported by any law or appellate court decision.

Below is from Justia:
**Shareholder Derivative Suits**

When an investor buys the stock of a corporation, he or she becomes an owner of the company. Although the board of directors and appointed executive officers run the day-to-day operations of the company, they ultimately serve at the pleasure of the shareholders. Although management is the job of the directors, shareholders are permitted under certain circumstances to file a lawsuit on behalf of the corporation. These are called shareholder derivative suits or shareholder derivative actions.

**What Is a Shareholder Derivative Action?**

One of the duties of a company's directors is to **pursue litigation against those who have harmed the company.** However, if the directors choose not to pursue valid claims against the appropriate parties, it is possible for a shareholder to do so. The suit is filed by the shareholder on behalf of the corporation against the **party alleged to have harmed the company.**

**Why Are Derivative Suits Filed?**

Since shareholders are generally allowed to file a lawsuit in the event that a corporation has refused to file one on its own behalf, many derivative suits are brought against a particular officer or **director of the corporation for breach of contract or breach of fiduciary duty**. Other derivative actions are filed against accountants and other advisers who have **somehow harmed the corporation**, although there is generally no limitation on the type of claim made by a derivative suit.

5

### What Are the Requirements of a Derivative Lawsuit?

A shareholder derivative action is filed pursuant to state law. If the suit is filed in state court, the substantive law and procedural rules of that state usually apply. **Filing in federal court means that state substantive law and the Federal Rules of Civil Procedure—including Fed. R. Civ. P. 23.1**, which specifically addresses derivative actions—are likely in force.

Justia says : "**Some states allow a person to bring a derivative suit as long as he or she held the company's stock at the time of the incident that gave rise to the suit. Others require that the shareholder owns stock in the company at the time of the inciting action and continuously throughout the resolution of the lawsuit.**"

Justia also states; "**Filing in federal court means that state substantive law and the Federal Rules of Civil Procedure—including Fed. R. Civ. P. 23.1**" apply.

### FRCP 23.1 (b)(1) is below:

(b) Pleading Requirements. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

So three requirements of a derivative suit filed in Federal Court are:

1) **Harm to the company by defendants**
2) **Plaintiff must be a shareholder at the time of the transaction(s) complained of.**
3) **The suits must meet the requirements of FRCP 23.1**

**However a suit to recover profits from insiders for Section 16 (b) violations have no requirements that the company be harmed by the defendants. Nor does section 16 (b) require that the shareholder own shares when the transactions in violation of 16 (b) occurred. Nor is a suit under section 16 (b) required to comply with FRCP 23.1.**

6

This suit, Olagues, Wollney v. Jerome Peribere does not meet any of the three requirements to be considered a derivative suit. Similarly this suit is not a representative suit as it fails to meet the requirements of damage to the issuer and the shareholder owning shares when the issuer was damaged. **But this suit meets all the requirements of a valid section 16(b) suit.**

**The U.S. Supreme Court Cases and Two Appellate Court Cases noted below support the conclusion that Olagues, Wollney pro se should be allowed to sue to enforce Section 16 (b) of the 1934 Securities Exchange Act and neither the Supreme Court nor an Appellate Court have ruled otherwise.**

The U.S. Supreme Court in Reliance Electric Co. v. Emerson Electric Co. 404 U.S. 418, 92 S. Ct. 596, 30 L. Ed. 2d 575 (1972) stated:

"**The narrowing of the remedy provided in section 16(b) does not comport with the principle of construction enunciated by the Supreme Court**".

**There, the Court also clearly set forth that:"To be sure, where alternative constructions of the terms of 16 (b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders."**

---

In **Bershad v. McDonough, 428 F.2d 693, 696.**, the court stated below which was accepted by the U.S. Supreme Court in **Reliance Electric Co. v. Emerson Electric Co. 404 U.S. 418, 92 S. Ct. 596, 30 L. Ed. 2d 575 (1972)**

"In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. The objective standard of Section 16 (b) imposes strict liability upon **substantially all transactions occurring within the statutory time period,** regardless of the intent of the insider or the existence of actual speculation. **This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect."**

7

**The Supreme Court in Gollust v. Mendell 501 U.S. 115, 122-123 stated :**

" **The only textual restriction on standing to sue is that the plaintiff must be owner of a security of the issuer at the time the suit is instituted**"..... "To enforce this strict liability rule on insider trading, **Congress chose to rely solely on the issuers of stock and their security holders.**"

The Ninth Circuit Court of Appeals allowed Olagues to Appeal pro se in Olagues v. Semel in 2006 in a Section 16 (b) suit and allowed J.D. Jordan to Appeal pro se in J.D. Jordan v. Hoag/ Netflix in 2018.

The District Court, Southern District of New York allowed Olagues and Wollney to appear pro se in Olagues, Wollney v. Perceptive Advisors in 2015.

The Second Circuit Court of Appeals allowed Olagues and Wollney to Appeal in a 16 (b) case in 2017 in Olagues , Wollney v. Perceptive Advisors.

The Fifth Circuit allowed J.D. Jordan to Appeal pro se in the Section 16 (b) suit Jordan v. Flexton in 2017.

The Fifth Circuit also clearly declared that a suit under Section 16 (b) was not a derivative suit in **Dottenheim v. Murchison, 227 F.2d 737, 738 (5th Cir. 1955)** , the court said:

"**The statute here involved creates a new cause of action, which, while similar in some respects to a secondary or derivative right, is not such a right at all. It is in reality a primary right. This is so because the statute which creates it makes it so.**"

**District Courts also clearly state that Section 16 (b) suits are not derivative suits.**

In Blau v. Oppenheim, 250 F.Supp. 881 (S.D.N.Y.), the court stated:

*282 (Weinfeld, J.) ("Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it."

8

Below are paragraphs from **SCHAFFER EX REL. LASERLIGHT INC V. CC INVESTMENTS , LDC** 286 F.Supp 2d 279 (S,D.N.Y. 2003) October 2, 2003 which clearly explain why a section 16 (b) case is not a derivative case:

"Indeed, while there are some similarities between a § 16(b) case and a traditional shareholder derivative action, including the elements that both actions involve as the lead plaintiff a stockholder prosecuting the underlying claim after the corporation declines to do so and that any recovery inures to the issuer's benefit, **§ 16(b) suits and derivative actions differ in more fundamental ways.**"

" First, a § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. See Dottenheim, 227 F.2d at 738 ("[Section 16(b)] creates a new cause of action, which ... is in reality a primary right."

"This is so because the statute which creates it makes it so."); Blau, 250 F. Supp. at 885 ("**[A] section 16(b) suit ... is not derivative ... but one to enforce a primary right created by the Act in favor of the issuer as well as its security holders.**"); Pottish v. Divak, 71 F. Supp. 737, 738-39 (S.D.N.Y. 1947) ("Section 16(b) of the Securities Exchange Act of 1934 creates a new cause of action which did not exist at common law or by virtue of the provisions of any statute.")."

"In other words, the § 16(b) action amounts to an *enforcement* right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action."

"Furthermore, as reflected in the plain language of the statute, § 16(b) was enacted because of the "national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b; see also Feder v. Martin Marietta Corp., 406 F.2d 260, 262 (2d Cir.1969) ("The purpose of section 16(b) as succinctly expressed in the statute itself is to prevent `unfair use of information' by insiders and thereby to protect the public and outside stockholders.").

"By contrast, the underlying scope and purposes of the pure derivative cause of action serve broader objectives. Such an action enables the shareholder to prosecute a broader range of wrongdoing by corporate officers or agents committed against the corporation on the basis of recognized causes of action the corporation itself would have under the common law, and thereby to vindicate more extensive rights and interests on behalf of the corporation."

In light of the foregoing, Plaintiffs Olagues and Wollney respectfully request that the Court not dismiss this action.

Dated: July 20, 2018

Respectfully Submitted

*John Olagues*
John Olagues
413 Sauve Rd.
River Ridge LA 70123
olagues@gmail.com
504-305-4071

*Ray Wollney*
Ray Wollney
8331 Whiskey Preserve Circle #421
Ft. Myers, Fl. 33919
rwollney1@comcast.net
239-690-7754

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed/ delivered to the following individuals at the addresses listed:

James Carlos Smith

Nexsen Pruet, LLC

227 West Trade Street

Suite 1550

Charlotte, N.C. 28202

This the 20th day of July, 2018.

_Ray Wollney_
Signature

Ray Wollney
(Print Name)

RECEIVED
CHARLOTTE, NC

JUL 24 2018

Clerk, US District Court
Western District of NC